We move to the second case this morning, Yochim v. Carson. May I please support Molly Bui for Appellant Elisa Yochim? With me at Council table is Robert Selden. This is a case in which the Reasonable Accommodation Branch of the Department of Housing and Urban Development three times found that Ms. Yochim was a qualified individual with a disability who was entitled to reasonable accommodation. Ms. Yochim's first-line manager simply would not accept that, and three times she denied Ms. Yochim's accommodation requests. That conflict alone, between the agency's own neutral reasonable accommodation experts and Ms. Yochim's first-line manager, shows that defendant did not bear their burden on summary judgment of demonstrating an absence of a genuine issue of material fact. There are two additional issues in this appeal, neither of which was surmounted by the government before the district court or in this appeal. First, that Ms. Yochim has raised an issue over whether she was accommodated, and second, even if she was, having suffered concrete injury as a result of the delay in the RA process, that she was subjected to an actionable hostile work environment. The backdrop of this case, of course, is that the medical evidence of Ms. Yochim's disability and her needs was undisputed by defendant. Ms. Bui, how does recovery from surgery fit into the Americans with Disabilities Act Rehabilitation Act framework as distinct from things like sick leave and FMLA that are intended to deal with short-term conditions like recovery from surgery? Well, Your Honor, the 2008 ADA Amendments Act, which I will call ADAAA, was specifically amended, the statute, to include temporary disabilities. Previously, the ADA and the Rehabilitation Act were focused on permanent disabilities. That is no longer the case. Temporary disabilities are specifically recognized under the ADAAA as being covered by the statute. Therefore, Ms. Yochim did have recourse under the Rehab Act due to those changes. And she has demonstrated through extensive medical evidence, as I said, which has not been challenged by defendant, that her disabilities, that she was substantially limited in a major life activity, and that she was a qualified individual with a disability, meaning that she could perform the essential duties of her job with or without reasonable accommodation. Therefore, she meets the qualifications under the Rehab Act for it to be applicable to her. There came a time, did there not, maybe in August of 2014 or thereabouts, where there were concerns about her performance? Is that right? That is correct in the sense that defendant took her off of telework, I believe in June of 2014. So by the time that third request was lodged, in or about August of 2014, there were concerns about performance. And in HUD's response or management's response to the plaintiff's request for a reasonable accommodation in August, there's a statement there where management says, you were asked to identify alternative accommodations, but you've not responded. Well, first I'd like to address your... Is that factually accurate?  Do you know where in the record her response was or where the record shows that she responded? Well, Your Honor, by August of 2014, she had had ongoing litigation over the government's denial of her RA requests. She had made it known over and over to the government that she objected to their decisions on her RA requests, and the supposedly alternative accommodations that they offered her in September of 2014 were the same that they had been offering her in every other instance. See, I think I'm seeing the record different than you are. At that point in time, her direct supervisor, was it Dana Brennan? Yes, Your Honor. Okay. Ms. Dana Brennan was saying, look, I need you at work because of past performance concerns. For some amount of time. And it seems like that colloquy back and forth came to the defendant saying, unless you're willing to accept my teleworking for three days a week at a minimum, I'm going to take the position that it's not a reasonable accommodation. Well, we disagree. That's the way I... I mean, where in the record is that? Can you disprove what I just said? Well, for one thing, Your Honor, defendant has the burden of showing that the alternative accommodations they offered were reasonable and that they would have effectively accommodated Ms. Yochum's functional limitations. In no way have they done that. Additionally, to address... Really, that management's August response doesn't do that? No, Your Honor. In fact, many of the alternative accommodations they offered address physical conditions that weren't even at issue in that RA request. For example, they offered her typing software, which had absolutely nothing to do with the disability over which that accommodation was being sought. It offered her an ergonomic assessment. And what about the other? I mean, you're picking the obvious ones. What about the ones where it says we're going to approve leave for medical or health-related appointments? Well, Your Honor, a federal employee who has a leave balance can always take leave. That is not a reasonable accommodation. That's something that's available to any federal employee with a leave balance. And that's what Ms. Yochum had done repeatedly since December of 2013, or 2012, when she first made her RA request. And I would like to address your question about her performance because we noted in our briefs that Jackie Cumber, who was the head of the RA branch, was specifically asked about this in her deposition. And she said that performance issues and the RA process are to be addressed separately. If defendant had an issue with Ms. Yochum's performance in August of 2014, they had the option to put her on a performance improvement plan. They had an option to issue her a letter of counseling about her performance, none of which they did. Instead, they utilized the RA process incorrectly to address alleged performance deficiencies that only cropped up after 20 years of service when Ms. Yochum sought reasonable accommodation and otherwise engaged in protected activity. I think that's a, I mean, my sense is the agency will say they cropped up because we restructured the law department. And her supervisor, in the wake of the performance issues, thought she needed to be physically present in the workplace at least two to three days a week. I feel certain that will be the defendant's argument. However, we put evidence on the record that that is incorrect and that raises, at a minimum, raises a genuine issue of material fact that can only be decided by a jury about her performance. For example, we pointed to a performance appraisal that was issued at the end of FY 2013, I think it actually was issued to Ms. Yochum in January of 2014, that was at the fully successful level. And it noted in there that Ms. Yochum had been doing the things that defendant claims she couldn't do while working from home. She had been participating in joint training with various members of the staff. She had been attending mandatory meetings. In fact, we put evidence in the record that when she was required to be in the office, she came into the office, even taking a cab at her own expense, to come in when she needed to be there. So to the extent that defendant is making a performance argument here, we certainly have put evidence in the record to contradict it, sufficient to surmount a summary judgment challenge. How much time does plaintiff agree it was essential for her to be in the office? Any? Well, sure. You mean with respect at any point in time or with respect to the August? Let's say skip the surgery recovery. Okay. So in August of 2014, Ms. Yochum asked to have three days a week of telework, meaning she would be in the office two days a week. That is what her supervisor told everyone in the office. You can telework Monday, Wednesday, and Friday. I just want you to be in the office, everyone. Nobody can telework on Tuesdays and Thursdays. That is what Ms. Dana Brennan herself said. Ms. Yochum was not asking for anything beyond that at that point in time. And with respect to her earlier RA requests, I would just like to point out that those requests were temporary in nature. Her requests to work from home full-time were temporary in nature and were to be evaluated at the end of the time period that was sought in the RA request. And I notice that I'm into my rebuttal time now. If you would, one of the issues that I find confusing about this case, Ms. Bui, is that plaintiff seems to have taken the approach that she could have physical therapy only close to her home. Your Honor, we would assert that that was not plaintiff's approach necessarily. That is what her doctor advised, because the doctor was familiar with specific physical therapists who she had worked with before, and this doctor was coordinating Ms. Yochum's care and specifically referred her to those physical therapists. Does an employer have to accommodate that kind of choice as opposed to... The office is in downtown Chicago, right? That's correct. Very close to this building. I believe that's correct. So presumably there are lots of opportunities for physical therapy close to the office. And that may be so, Your Honor. I think that it does raise an issue of to what extent the federal government gets to dictate which medical providers an employer does or doesn't get to. The federal government is not trying to dictate that. It's trying to establish a reasonable working schedule. Certainly, Your Honor. And this is supposed to be an interactive process. I'm aware of the debates about it in this case, but we'll see how that works out. Okay. Thank you. May it please the Court. In this appeal, Ms. Yochum looks at all the accommodations that were offered by HUD, cherry-picks a few that sound like they can be attacked, and says that wasn't enough. She wanted to work from home. But these accommodations that were offered in response to each of the three requests were reasonable, and that's what matters in this case. Let's step back. This is a case about an employee, a longtime employee, who had a very comfortable arrangement. She worked with very little input from her supervisors. She worked independently. She felt she didn't need lots of supervision, and she certainly didn't want it. She did things her own way. But then things changed. In October 2012, HUD's Office of General Counsel underwent a nationwide restructuring. It wanted to do things better. It wanted its attorneys to come to work more often so they could collaborate, they could cross-train, they could become generalists instead of specialists. It envisioned its attorneys working closely together. And Ms. Yochum didn't like this change. She didn't like being managed by her new supervisor. She wanted to continue to work independently. She wanted the freedom to continue having four-day weekends without having to take sick leave or annual leave. This is not a case where an employee made requests and was met by a dismissive or a callous employer. To the contrary, HUD responded to each of those requests with a selection of accommodations that were reasonable. What does the record show regarding what Ms. Dana Brennan was requiring of other members of her group in the law department in the August 2014 time period? The record has shown that Ms. Dana Brennan met with her attorneys immediately after the restructuring, advised them that she would no longer be approving credit hours for employees to, like Ms. Yochum specifically, to create their own preferred working schedule, that she wanted them to come into the office and to cross-train one another. But for any, in other words, was there any kind of suspension, if you will, or of the agency's general teleworking policy? In other words, what she said, I want you here five days a week. There was no suspension of any kind of policy. Now, throughout this entire period, telework, credit hours, taking sick and annual leave, these are all things that an employee can request, but they are subject to management approval. And the telework policy is very clear on that, that it's management's discretion how work should be accomplished in an office. Is there any indication that other members of that sector of the law department were being treated differently? Ms. Yochum has made that suggestion, but it is true that in discovery, HUD advised and disclosed to appointees the few number of days that Mr. Ligotti worked from home in response to a health issue. So the suggestion that that would create an issue of fact or an issue for the jury wasn't supported. Now, the district court correctly found that Ms. Yochum's sole proposed accommodation to work from home full-time wasn't reasonable. And the suggestion I keep hearing that they were all for temporary periods of time to work from home. It's just not supported by the record. And I'll focus on the second and the third question. That's the concern here because of the surgery rather than a general change. When do we quit worrying about what the surgery required and get back to the way she operated prior to that time? I don't understand the question. Well, you're saying it's all the same. It doesn't make any difference whether it's surgery and the time off because of the surgery. I would say it certainly makes a difference. And I think the point that HUD would make is that it evaluated the request. It evaluated the documentation that Ms. Yochum provided, and it responded accordingly. HUD never said to Ms. Yochum, you're not disabled, so we don't have to accommodate you. HUD never said, as the court has, you know, you can take judicial notice of the fact that HUD's office is downtown. HUD never said to Ms. Yochum, there's an athletical physical therapy location literally next door to the HUD office building. Have your care delivered there. No, HUD looked at the request, looked at the documentation that was provided, and responded accordingly. I want to take a moment to address the Belinsky opinion because we submitted it as supplemental authority yesterday. The facts in this case are similar to that matter, but, in fact, this case goes far beyond that case, and there are some items that stand out. First of all, in this case, we can look at a written job description that changed after the October 2012 restructuring to figure out what HUD's management and what HUD's Office of General Counsel wanted its attorneys to do after the restructuring. That position description said that after the restructuring, Ms. Yochum was responsible for, quote, space and file management, training and orientation, working groups. Another quote, she was responsible to contribute as part of a highly functioning team consisting of other attorneys and legal support professionals, and to assist junior members of the staff in the performance of their duties. Now, related to that first point is the point that, in this case, we have evidence in the record that these were actually expected of an employee after a fundamental restructuring. This isn't some pie-in-the-sky potential that may have applied to an employee. No, we have statements from management, certainly, but additionally, affidavits from Ms. Yochum's colleagues that detailed the ways in which they were expected to be in the office and which their jobs had to be performed, at least in part, from the office after the restructuring. And then third, and finally, in this case, unlike in Valensky, Ms. Yochum had disciplinary issues that arose after the restructuring, and even if she was able to perform somewhat in the initial period thereafter, which is the same situation in Valensky, here, over time, we can see performance evaluations, a telework suspension, a reprimand, a one-day suspension, and those aren't contested in this action. Ms. Yochum doesn't appeal the retaliation claims that she had before the district court. So we can see that Ms. Yochum had disciplinary problems and that her performance declined after the restructuring. And we can take, again, from Valensky, the fact that an employee cannot look to their performance before a restructuring to prove that they were somehow able to perform their essential duties after a restructuring that changed those essential duties. Finally, I'll turn very briefly to the retaliatory hostile work environment claim. To be clear, Ms. Yochum's claim in this appeal seems to be that by allegedly failing to engage in the interactive process that had somehow created a retaliatory hostile work environment. The district court rejected that argument, and there are good reasons why, a couple of good reasons why. First of all, that theory flies in the face of well-established precedent that failure to engage in the interactive process on its own does not entitle a plaintiff to release. That's one problem. Second problem, this court hasn't held, it has assumed but not held that a hostile work environment claim is cognizable under the Rehabilitation Act. And then third, finally, well third at least, even if we assume that that type of claim can exist here, Ms. Yochum failed to tie any alleged harassment to protected activity. The claim would have to be, if it's based on failure to engage in the interactive process, that her request somehow caused HUD to fail to engage in the interactive process, and that just doesn't make any sense. Also, there were no overt threats here, nothing of the type that this court has found in other cases to support a retaliatory hostile work environment claim. If the court has no further questions, we ask that the decision of the district court be affirmed. Thank you, Your Honor. Thank you. I'll give you a minute. Thank you, Your Honor. The first thing I would like to address is something Ms. Rao just said in her argument, which is HUD never said to Ms. Yochum, you're not disabled. And that's exactly right. In fact, they said the exact opposite. They said three times, we find that you are disabled, you're a qualified individual who is entitled to disability. That came from HUD's reasonable accommodation experts. So there should not be any question in this case on appeal about whether she was or was not disabled and a qualified individual. HUD has admitted that she was. In terms of the Belinsky case, I would just like to address a few distinctions between that case and this one. For one, Ms. Belinsky, the plaintiff in that case, was asking for an indefinite work from home situation. That is not what is at issue here at all. And we have shown that when Ms. Yochum was asked to come into the office, she did so. And there is no evidence that defendant has put on the record that she refused to come into the office for mandatory meetings or for joint training. Thank you, counsel. Thank you. Thanks to both counsel. The case will be taken under advisement.